In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-1995

DAVID ARMATO,

*Plaintiff-Appellant,*

*v.*

RANDY GROUNDS, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Central District of Illinois.
No. 3:11-cv-03023-RM-BGC — **Richard Mills**, *Judge.*

ARGUED MAY 29, 2014 — DECIDED SEPTEMBER 4, 2014

Before BAUER, KANNE, and SYKES, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant David Armato filed a four-count complaint against five defendants employed by the Illinois Department of Corrections at the Robinson Correctional Center: Randy Grounds, Michele Littlejohn, Glenn Jackson, Dion Dixon, and Edward Huntley. Counts one, two, and three claimed that the defendants violated Armato's constitutional rights in violation of 42 U.S.C. § 1983. Count four, a state law claim, alleged that the defendants falsely

imprisoned Armato. The district court granted defendants' Motion for Summary Judgment on all counts, finding that no rational trier of fact could find that Armato was unlawfully detained beyond his court-ordered release date. Armato appeals to this court seeking review of the district court's judgment in favor of defendants on his § 1983 claims.

## I. DISCUSSION

Armato, a convicted sex offender, committed two theft offenses in Illinois in 2005, the first on May 7, and the second on December 30. He was convicted of both crimes in separate cases in the Circuit Court of Lake County (Nos. 05 CF 1661 and 05 CF 5015, respectively). On March 6, 2006, Armato was sentenced to ten years' imprisonment for the second theft, to run concurrently with his sentence on the prior charge. The judicial orders of that sentence did not impose a term of mandatory supervised release ("MSR") and stated that the Illinois Department of Corrections ("IDOC") shall administer good time credit to Armato "for time served in the Lake County Jail and while awaiting transport to the Department of Corrections." When the IDOC first processed Armato, he was projected to be released on May 9, 2010, with the mistaken understanding that he had entered state custody on May 9, 2005.

### A. Armato's Detainment at the Robinson Correctional Center

Armato arrived at the Robinson Correctional Center in 2007. His sentence was recalculated to reflect the good time credit he earned for his time already served. His new projected release date was November 9, 2009.

Defendant Littlejohn was an office administration specialist and the acting supervisor of the records office at Robinson Correctional Center. One of her primary responsibilities was to calculate every prisoner's release date. In September 2009, Littlejohn began reviewing Armato's paperwork in anticipation of his release. Littlejohn noticed that Armato's file lacked reliable information pertaining to the time he spent in Lake County Jail: it stated that Armato had been incarcerated since May 9, 2005; this was impossible since Armato had committed his second theft offense on December 30, 2005. Using the two criminal judgments sent from the Lake County Jail, Littlejohn recalculated Armato's release to be September 6, 2010. Littlejohn informed Armato of these changes and told him that his release date could again be recalculated if the sentencing court issued a new order detailing any applicable credit. The IDOC advised Armato to seek judicial clarification of his release date.

In February 2010, Armato sought an order to clarify his release date. On February 18, 2010, the Circuit Court of Lake County entered three documents related to Armato: two typed judgments and one handwritten agreed-upon order. The two typed orders were in reference to each of Armato's cases; both orders were signed by Judge Theodore S. Potkonjak and stated in relevant part, "It is further ordered that [w]ith credit for 373 days served in the Lake County Jail—credit for time awaiting transport to the Department of Corrections—good time credit as administered by the Department of Corrections—def to be released from the Department of Corrections without a term of Mandatory Supervised Release." The typed orders did not reference a specific date for Armato's release.

The Assistant Public Defender representing Armato, C. P. Haran, prepared a handwritten order captioned "Agreed Order" that was signed by Judge Potkonjak. The Agreed Order read:

It is hereby ordered that:

1) Mr. Armato shall receive credit on 05 CF 5015 & 05 CF 161 [sic] for 69 days for time in custody from 12/30/05 (date of offense of 05 CF 5015) through March 6, 2006. Defendant had not previously received this credit. (Defendant receives this in addition to original credit for time served[.])

2) Mr. Armato was not admonished on the record regarding <u>any</u> term of Mandatory Supervised Release.

3) Mr. Armato's mittimus shall be amended to include the additional 69 days credit in paragraph (1) and <u>NO</u> term of Mandatory Supervised Release.

4) Mr. Armato shall be released from the Department of Corrections, without a term of MSR, on Friday, May <u>28</u>, 2010.

(emphases in original).

**B. The Defendants Believe Armato's Typed Sentencing Orders are Against State Law and Seek Guidance from the Office of the Attorney General**

On February 22, 2010, Littlejohn received the two typed orders and recalculated Armato's release date to be August 23, 2009.[1] As a result, Armato was eligible for release. However, Littlejohn was concerned that the orders stated Armato should be released without a term of MSR; Littlejohn believed that Illinois law required a term of MSR in Armato's case (At the time of Armato's sentencing, § 5-8-1(d) of the Unified Code of Corrections provided, "Except where a term of natural life is imposed, every sentence shall include as though written therein a term in addition to the term of imprisonment … . [S]uch term shall be identified as a mandatory supervised release term."). Littlejohn understood that when a previously-convicted sex offender is released from custody, he is subject to strict MSR conditions such as electronic monitoring and a suitable host location approved by the IDOC. If Armato was subject to a term of MSR, he would need to find an approved host location for electronic monitoring before he could be released. While efforts had been made to find a suitable host location for Armato, none could be found. Littlejohn determined that even if Armato was subject to release, the IDOC could not release him without first finding a suitable host location.

That same day, Littlejohn contacted the Lake County Assistant State's Attorney who confirmed that the sentencing

---

[1] Littlejohn testified that she only relied upon the two typed court orders dated February 18, 2010, to recalculate Armato's projected release to be on August 23, 2009. It is unclear whether anyone at IDOC received the handwritten order or whether it was used by other IDOC officials while making subsequent decisions about Armato's release.

judge had in fact intended no term of MSR be imposed. Littlejohn then informed her IDOC colleagues of her concerns about Armato's case. By February 23, 2010, the following employees at the IDOC Headquarters were made aware of the situation: Defendant Glenn Jackson, Chief Records Officer and Littlejohn's supervisor; Defendant Edward Huntley, Chief Legal Counsel and Special Litigation Counsel; the coordinator for sex offender services; and one other attorney within IDOC. An attorney for the Prisoner Review Board was also informed of the matter. These individuals agreed with Littlejohn that a term of MSR was mandatory for Armato by operation of state law. The attorney at the IDOC Headquarters advised the defendants that it was necessary to contact the Illinois Office of the Attorney General ("AG's Office") for assistance. In a group email, the attorney wrote, "The Court in my opinion cannot legally sentence the offender without a term of MSR. Unless we challenge the order through the AG's Office, I think we are bound to follow the order."

Jackson informed Littlejohn that based on her most recent calculation of Armato's release date and the fact that a suitable host site was not secured, the appropriate line of action would be to "violate [Armato] at the door."[2] Armato was first violated

---

[2] Pursuant to Fed. R. App. P. 28(j), the AG's Office provided this court with clarification on the practice of "violations at the door" in a letter dated June 20, 2014. A "violation at the door," also called the "turnaround practice" of the IDOC, is the result of (1) the authority granted to the Prison Review Board to set out the conditions for a parolee's release and determine whether a violation of his MSR conditions should result in a revocation of his release, and (2) the IDOC's responsibility to determine

(continued...)

at the door on February 23, 2010. Defendant Dixon, the Supervisor of the Sex Offender Unit in the Parole Division at Robinson Correctional Center, prepared the violation report and notice of charges against Armato. Dixon was unaware that the court had not imposed a term of MSR for Armato.

Littlejohn again contacted Huntley on February 26, 2010, seeking an update on Armato's case. That day, Huntley contacted the AG's Office to challenge the sentencing orders and have the court amend them to include a term of MSR. On several occasions, Huntley spoke with the AG's Office in an attempt to persuade them to seek relief on behalf of the IDOC in the Circuit Court of Lake County. The AG's Office did not make an immediate decision as to whether it would take up the case; IDOC officials waited through spring to receive a response. During this time, Huntley was in contact with Jackson and told him not to release Armato until the issue was resolved.

On March 9, 2010, Armato submitted an emergency grievance in regard to his continued detainment to the Warden, defendant Randy Grounds. Grounds was responsible for enforcing all of Robinson Correctional Center's policies and procedures, including the review of emergency grievances. Since emergency grievances are limited to special circumstances involving health, injury, or other medical issues, Grounds denied Armato's emergency grievance. Grounds

---

[2] (...continued)
whether a parolee is in compliance with the conditions of his MSR. 730 ILCS § 5/3-3-1, 3-14-2 (2012); *Murdock v. Walker*, No. 08 C 1142, 2014 WL 916992 at *2 (N.D. Ill. Mar. 10, 2014).

authorized Armato to instead pursue a regular grievance through normal channels, which he did later that month. The reviewing grievance officer concluded that the issue raised in Armato's grievance would have to be resolved by the IDOC's Administrative Review Board because a "legal opinion will have to be rendered regarding the validity" of the judge's sentencing orders requiring release without a term of MSR. Grounds never reviewed the second grievance, but the Assistant Warden, with authority, signed Grounds' name indicating that the Warden agreed with the grievance officer's decision.

On April 7, 2010, the Prison Review Board held a hearing with Armato in relation to his first violation at the door. The Prison Review Board declined to find a technical violation of Armato's MSR because his situation was actually a "placement issue." The order from the Prison Review Board further stated that Armato's release was "contingent upon execution of Parole or Mandatory Supervised Release."

Nonetheless, since IDOC officials were still awaiting a decision from the AG's Office, and Armato still did not have a suitable host location, they violated Armato at the door for a second time on April 29, 2010. Dixon prepared the violation report and notice of charges; he remained unaware that Armato's sentencing orders did not impose a term of MSR.

Meanwhile, Littlejohn sought updates on Armato's case by repeatedly emailing Jackson (she emailed Jackson ten times between February 26 and May 21, 2010). Jackson contacted Huntley on May 21 asking whether the AG's Office made a decision. Huntley responded in an email:

Glenn, the AG's Office has declined to pursue a request to the court that the sentencing orders be modified or otherwise move for leave to intervene on behalf of the Department in this case. That being so, I believe we have exhausted the potential alternatives and will have to let Armato go as a discharge. I suppose we should show it as a court-ordered discharge as that is exactly what it is.

Armato was released later that day on May 21, 2010, without a term of MSR.

### C. The District Court Proceedings

Armato initiated the present action on January 24, 2011, alleging violations of his Eighth and Fourteenth Amendment rights under 42 U.S.C. § 1983, and a state law claim for false imprisonment under federal supplemental jurisdiction.

The district court granted summary judgment in favor of the defendants on all claims for six reasons: (1) the February 18, 2010, Agreed Order provided a release date of May 28, 2010; Armato was in fact released one week earlier and was not harmed; (2) Armato's Eighth Amendment claim fails because the defendants had a colorable belief that the other court orders were void for failure to impose MSR and were not deliberately indifferent to Armato's incarceration; (3) even so, qualified immunity applies to the defendants because they did not know that they were violating clearly established constitutional rights; (4) Grounds and Dixon were not sufficiently involved to be liable under § 1983; (5) Armato's due process claim fails because he had other remedies available to him in the court system; and (6) Armato's state claim for false

imprisonment is banned by the Eleventh Amendment and should be brought in state court.

Armato appealed to this court seeking review of the district court's judgment only in relation to his § 1983 claims.

## II. DISCUSSION

We review a district court's grant of summary judgment *de novo*. *Pagel v. TIN Inc.*, 695 F.3d 622, 624 (7th Cir. 2012). Summary judgment is appropriate when the evidence, viewed in a light most favorable to the non-moving party, shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). While the evidence is viewed in a light most favorable to the non-moving party, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation omitted). Inferences that rely upon speculation or conjecture are insufficient. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co., Ltd.*, 475 U.S. at 587 (citing *First Nat. Bank of Ariz. v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).

To survive summary judgment of a claim brought under § 1983, this court focuses on "(1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or

laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981). The defendants here clearly acted under state law since they are employed by the IDOC and were following state law procedures when making decisions about Armato's release. Armato must therefore establish that a reasonable trier of fact could find that he was deprived of his constitutional rights by being detained beyond his release date.

## A. Armato's Claims Fail on the Merits

Armato's claims fail on the merits because IDOC officials complied with the handwritten Agreed Order entered on February 18, 2010, and Armato never challenged the dispositive nature of the order. The Agreed Order, prepared by the Assistant Public Defender and signed by the sentencing judge, expressly stated, "Mr. Armato shall be released from the Department of Corrections, without a term of MSR, on Friday, May <u>28</u>, 2010." Armato was in fact released one week earlier without a term of MSR on May 21, 2010.

This court reviews the effect of an Illinois state judgment by looking to state law. *See DeGuelle v. Camilli*, 724 F.3d 933, 937 (7th Cir. 2013) (Federal courts are required "to give state court judgments the same preclusive effect that the state courts that issued the judgments would give them."). Under Illinois law, the meaning of an agreed order "should be determined by the language chosen by the parties." *Clark v. Standard Life & Acc. Ins. Co.*, 386 N.E.2d 890, 896 (Ill. App. Ct. 1979). Here, the plain language of the February 18, 2010, Agreed Order stated that Armato should be released on May 28, 2010. To elaborate:

> [A]n agreed order is conclusive on the parties and can not be amended or set aside by one of the parties

> without a showing that the order resulted from fraudulent representation, coercion, incompetence of one of the parties, gross disparity in the position or capacity of the parties, or newly discovered evidence.

*Olsen v. Staniak*, 632 N.E.2d 168, 173 (Ill. App. Ct. 1994). Armato has not provided arguments or authority challenging the agreed order or requesting it be amended.

Instead, Armato points to the two typed judgments also entered on February 18, 2010, to show that his release date was earlier than May 28, 2010. The two judgments stated that Armato would receive certain credit to be included in his sentence. The district court found that these two typed orders were of "little consequence." We are compelled to agree.

The two typed judgments were not labeled "Agreed" and do not indicate any knowledge or participation on behalf of Armato or the state in their construction. The district court accurately noted, "On February 18, 2010, the judge, the prosecutor, and the public defender [representing Armato] were only absolutely certain of one thing—that Armato was to be released on May 28, 2010." While the first portion of the Agreed Order mentions that Armato shall receive credit for time served, nothing in the Agreed Order indicated that the explicit date for Armato's release listed on the page should be further modified. The plain, unambiguous language of the agreed order clearly set a release date for May 28, 2010, and the defendants did not detain Armato beyond that date. Since IDOC officials fully complied with the terms of the court's order, Armato did not suffer any injury.

### B. Even Without the Handwritten Order, Armato's Eighth Amendment Claim Fails as a Matter of Law

It is important to note that Littlejohn, Huntley, and Jackson testified that they were relying on the two typed orders, not the handwritten Agreed Order, when determining Armato's release date. Even without the court's handwritten order, however, Armato's constitutional claims must still fail as a matter of law.

To defeat summary judgment on his Eighth Amendment claim, Armato needs to prove that the defendants held him beyond the term of his incarceration without penological justification, and that the prolonged detention was the result of the defendants' "deliberate indifference." *Campbell v. Peters*, 256 F.3d 695, 700 (7th Cir. 2001). Deliberate indifference requires more than negligence, rather the defendant "must meet 'essentially a criminal recklessness standard, that is, ignoring a known risk.'" *McGee v. Adams*, 721 F.3d 474, 480–81 (quoting *Johnson v. Snyder*, 444 F.3d 579, 585 (7th Cir. 2006). Armato failed to show that the defendants deliberately held him beyond the term of his incarceration.

The defendants were not deliberately ignoring Armato's detainment without penological justification. Huntley, Jackson, and Littlejohn testified that they believed releasing Armato, a convicted sex offender, without a term of MSR was contrary to state law. In making determinations about a prisoner's release, prison officials are permitted to rely upon "a reasonable interpretation of a state statute," even if they are ultimately mistaken. *Campbell*, 256 F.3d at 701. Littlejohn testified that her concern about Armato's sentencing orders was that "by Illinois

statute, you are supposed to have an MSR term, so it is basically against the law to not have an MSR term." After Littlejohn expressed this concern to her colleagues, an IDOC attorney informed them that he also believed the court "cannot legally sentence this offender without a term of MSR."

The record amply demonstrates that IDOC officials were actively pursuing assistance from the AG's Office from the moment they discovered that Armato's release appeared contrary to state law: Huntley testified that he spoke with the AG's Office on several occasions, Littlejohn repeatedly contacted Jackson and Huntley, and Jackson was continuing to pressure Huntley in efforts to clear up the issue. Huntley testified that he believed he was "on sound legal footing" in holding Armato until the IDOC received a response from the AG's Office and that he was aware that the AG's Office had successfully "gone to court a number of times" to alter the conditions of a prisoner's sentence. As soon as the AG's Office informed the defendants that it would not be pursuing the matter, the defendants knew they had exhausted the remedies available to them and promptly released Armato without a term of MSR.

## C. Armato's Fourteenth Amendment Claim Fails as a Matter of Law and is Precluded by the Available State Court Remedies

Armato's Fourteenth Amendment claim of a violation of his right to procedural due process also fails as a matter of law. A procedural due process claim requires the plaintiff to show (1) that he was deprived of a protected liberty or property interest, and (2) that he did not receive the process that was due to

justify the deprivation of that interest. *See McKinney v. George*, 726 F.2d 1183, 1189 (7th Cir. 1984). We have already determined that Armato was not deprived of a protected liberty interest because he was released prior to the agreed-upon release date written in the Agreed Order. Even if the defendants had in fact incarcerated Armato beyond his proper release date, however, Armato received the process that was due in the circumstances.

Here, the processes undertaken by the defendants were sufficient to address Armato's situation and justify his prolonged detention. Armato argues that "[t]he defendants here, knew, or should have known, that the only reasonable processes were to seek court intervention, rely on the Parole Board decision or have a meaningful internal grievance procedure." In fact, the defendants relied on all three of these options. The defendants immediately and persistently contacted the AG's Office to pursue court intervention on behalf of the IDOC to amend Armato's sentences in accordance with Illinois law. The decision of the Prison Review Board merely stated that Armato's release was contingent upon his MSR and did not resolve the issue of whether Armato could be released without MSR. Armato also availed himself to the internal grievance procedure, where he was told the issue could only be resolved by a legal opinion. Armato's prolonged incarceration was justified by the fervent efforts of the defendants to receive assistance from the AG's Office to pursue court intervention to amend his sentence.

Furthermore, Armato had numerous sufficient remedies available to him in the state court including a writ of habeas corpus, a writ of mandamus to correct the Agreed Order

stating his exact release date, and a claim of false imprisonment. In *Toney-El v. Franzen*, 777 F.2d 1224, 1225 (7th Cir. 1985), an inmate claimed a violation of his right to due process when the Department of Corrections improperly held him in prison for an additional 306 days due to confusion in calculating his release date. The district court found in favor of the inmate, but this court reversed. *Id.* at 1226. We found that the state court remedies giving the inmate "the right to seek a writ of mandamus from the state court to correct the error" and "a cause of action in Illinois courts for false imprisonment" were both "adequate and available" remedies, precluding a claim for due process for a state prisoner in Armato's particular situation. *Id.* at 1228.

### III. CONCLUSION

Armato did not suffer any injury because he was released prior to the precise date in the "Agreed Order," the defendants were not deliberately indifferent to Armato's incarceration because they diligently pursued relief from the AG's Office for clarification, and Armato's due process claims fail as a matter of law and are precluded by the remedies available to him in state court. The district court decision is AFFIRMED.