NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted October 15, 2020[*]
Decided October 28, 2020

**Before**

JOEL M. FLAUM, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

MICHAEL Y. SCUDDER, *Circuit Judge*

No. 19-3181

| | |
|---|---|
| RAMON CLARK, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Illinois. |
| | |
| *v.* | No. 16-cv-1266-SMY-MAB |
| | |
| WEXFORD HEALTH SOURCES, INC., | Staci M. Yandle, |
| et al., | *Judge*. |
| *Defendants-Appellees*. | |

## O R D E R

Ramon Clark, an Illinois inmate with a benign testicular cyst, has sued prison officials, alleging that the regular exams, medicine, special clothing, and ultrasounds that he received for his cyst violated the Eighth Amendment. The district court entered

---

[*] We have agreed to decide the case without oral argument because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C).

summary judgment for the defendants. Because no reasonable jury could find that the defendants recklessly ignored Clark's condition, we affirm.

Clark first noticed a lump on his left testicle in March 2016 when housed at the Pinckneyville Correctional Center in Illinois. A nurse confirmed the presence of a pea-sized mass and suggested an ultrasound. Dr. Michael Scott (the medical director) and another doctor determined that an ultrasound was not needed because the lump was new, small, pain-free, and not tender. Dr. Scott examined Clark the next month, found no change in the lump, and diagnosed a "non-specific scrotal mass"—likely a benign accumulation of fluid or inflammation. He recommended continued self-examinations and another medical evaluation in six months. Clark did not see Dr. Scott again.

Two months later, Clark transferred to Centralia Correctional Facility, and, for the first time, complained about testicular pain. Dr. Vipin Shah palpated the lump, noted that it had not changed in size or tenderness, and ordered ibuprofen and a follow-up appointment. A couple of months later, Dr. Venerio Santos, Centralia's medical director, examined the lump and recorded no change in size or tenderness. Dr. Arnel Garcia, another prison physician, evaluated the mass the following week and assessed some tenderness from possible inflammation or infection. He prescribed antibiotics and pain relievers, and he recommended that Dr. Santos consider an ultrasound for Clark. Dr. Santos and another doctor decided that, based on the overall stability of the lump, an ultrasound was still not needed; instead, continued monitoring was proper. Over the next four months, Clark saw Dr. Santos twice about testicular pain: Each exam revealed no changes, and Dr. Santos determined that the mass was benign. He renewed the prescription for ibuprofen to treat any pain.

The following year, Clark received more pain relievers and eventually two ultrasounds, which confirmed that the lump was benign. In January 2017, Dr. Santos authorized an ultrasound because, even though the lump was monitored "every three months" with "no change in size since Pinckneyville," Clark's pain persisted. The ultrasound revealed that the lump was a small, benign cyst. Six months later, Clark reported that the cyst was still painful and might be growing. Dr. Garcia ordered another ultrasound, which showed that the cyst was still benign and stable.

After the ultrasounds, Dr. Santos continued to treat Clark's testicular pain until, in mid-2018, he was transferred to a different prison. For the pain, Dr. Santos recommended briefs (instead of boxers) and a scrotal support, authorized antifungal and anti-itch creams, and re-prescribed ibuprofen and other pain relievers.

Clark filed unsuccessful grievances about his testicular pain. He complained that his painful lump was undiagnosed and that he would receive better treatment with outside doctors who might determine if the lump was cancerous. The grievances were denied. Upon receiving each grievance, the grievance officer consulted with the health unit, whose administrator reported that staff was monitoring Clark's issues, Clark's lump was benign, and more ultrasounds and outside doctors were not needed unless conditions changed. The Administrative Review Board denied his appeals.

This suit came next and ended at summary judgment. Clark sued his doctors, prison officials, and Wexford Health Sources, Inc., the prison's health-services provider, for deliberate indifference to his testicular mass in violation of the Eighth Amendment. *See* 42 U.S.C § 1983. He accused his doctors of failing to diagnose and treat his condition, the prison administrators of ignoring his grievances, and Wexford of denying the requests for additional ultrasounds. The district court adopted the recommendation of a magistrate judge, *see* 28 U.S.C. § 636(b)(1)(C), to enter summary judgment for the defendants. It ruled that no reasonable juror could find that the doctors had deliberately ignored Clark's testicular mass: They diagnosed it as benign, monitored changes with ultrasounds and regular visits, and prescribed medication. Likewise, no reasonable juror could conclude that the administrators, who investigated Clark's grievances and relied on the medical staff's opinions about his care, deliberately disregarded his condition. Finally, because Clark did not produce evidence of an unconstitutional policy, it ruled that Wexford was entitled to summary judgment.

On appeal, Clark first challenges the entry of summary judgment for the four doctors who treated him. To get past summary judgment on those claims, Clark needed to furnish evidence that the defendants recklessly disregarded his need for treatment of a serious medical condition. *See Farmer v. Brennan*, 511 U.S. 825, 834-39 (1994); *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). We review de novo the district court's conclusion that he did not. *See Wilson v. Adams*, 901 F.3d 816, 820 (7th Cir. 2018).

We agree with the district court that no reasonable juror could conclude that Dr. Scott, the first doctor to examine Clark, was reckless. No evidence contradicts that, based on his judgment that the mass was new, small, non-tender, stable, and (at that point) painless, Dr. Scott reasonably decided that the mass did not need an ultrasound, was likely benign fluid, and should be monitored. *See Petties*, 836 F.3d at 729 (noting decisions based on medical judgment are not deliberately indifferent). We recognize that this exam occurred a month after Clark first reported the mass. But this time span is

not an unconstitutional delay because, given the stability of the mass and absence of pain, the month wait did not exacerbate symptoms or prolong pain. *See id.* at 730–31.

Nor could a reasonable juror conclude that Dr. Shah, who briefly saw Clark after he transferred to Centralia in 2016, ignored Clark's complaint of testicular pain. Clark argues Dr. Shah provided no treatment for testicular pain, because the ibuprofen that he prescribed was for Clark's shoulder. But even if the ibuprofen was just for the shoulder (and we see no evidence that it was), Dr. Shah did not ignore Clark's complaints of pain: he palpated the lump, noted that it was stable in size and tenderness, and ensured that Clark had access to a pain medication.

Clark responds that the district court should have assessed Dr. Shah's treatment of Clark's testicular cyst in 2018 when he moved to Robinson Correctional Facility. But in his complaint, Clark limited the factual allegations against Dr. Shah to his time at Centralia in 2016. Because he first raised this new claim in his response to the motion for summary judgment, the district court permissibly refused to consider it. *See Whitaker v. Milwaukee Cty., Wisconsin*, 772 F.3d 802, 808 (7th Cir. 2014) (describing cases affirming district court's refusal to consider new claims based on factual allegations that plaintiff raised for first time in response to motion for summary judgment).

The district court also properly entered summary judgment for Dr. Santos and Dr. Garcia, the other physicians at Centralia. Dr. Santos regularly treated Clark over two years, monitoring the cyst for changes, prescribing pain medicine, other drugs, special clothing, a scrotal support, and eventually ordering an ultrasound, which revealed no cancer. Dr. Garcia likewise prescribed pain relievers and antibiotics, monitored the cyst, and asked Dr. Santos to consider an ultrasound. Clark responds that the pain relievers they re-prescribed had not previously worked, so they were deliberately indifferent to his pain. But we consider the totality of the care provided, not just the pain medicine in isolation. *See Petties*, 836 F.3d at 728. Here, in addition to re-prescribing the pain relievers, these doctors also varied other aspects of treatment to address Clark's unresolved symptoms. This treatment included authorizing anti-itch and antifungal drugs, briefs instead of boxers, and the scrotal support. Thus, overall, the doctors did not recklessly disregard Clark's medical needs.

Clark next challenges the entry of summary judgment for the administrators who denied his grievances and appeals over three years, showing, he believes, their deliberate indifference. But non-medical personnel may defer to the reasonable opinions of medical professionals when deciding a prisoner's medical grievances.

*See Figgs v. Dawson*, 829 F.3d 895, 903–04 (7th Cir. 2016). That occurred here: Before denying the grievances, the administrators contacted the medical staff, who explained that Clark's cyst did not need further treatment because it was small, benign, stable, and regularly monitored for changes. Clark presented no evidence that the administrators had reason to disbelieve this judgment or otherwise conclude that the treatment was unconstitutional. *See Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014).

Finally, Clark challenges the entry of summary judgment for Wexford, arguing that it knew but ignored that he was receiving substandard care. He appears to contend that, even if the individual doctors were not reckless, Wexford receives monthly reports on each inmate's care and thus knew but did not care that, after three years, he still had no diagnosis for his testicular pain. But Clark's argument falls short for two reasons. First, Clark does not provide any evidence that this reporting system exists and that his treatment history was provided to the company. Second, even if it was, Clark supplies no evidence that different treatment or exams would have necessarily revealed the cause of his pain. Finally, to the extent that Clark argues that Wexford had a policy of automatically denying ultrasounds, the claim fails. The only evidence that he supplied to support this claim was that Wexford's doctors initially decided against authorizing ultrasounds. But they did this, not because of a policy that inevitably required no ultrasounds, but because the mass had not grown or otherwise justified one. And Clark ultimately received ultrasounds when his pain persisted, and they confirmed that the mass was benign and stable. Thus, Wexford did not maintain any customs, practices, or policies that caused Clark to receive constitutionally deficient care. *See Woodward v. Corr. Med. Servs. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004).

The judgment of the district court is AFFIRMED.