In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 21-3332

JOHN SABO,

*Plaintiff-Appellant,*

*v.*

MEGAN ERICKSON, et al.,

*Defendants-Appellees.*

———————————

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 20-CV-718 — **William E. Duffin**, *Magistrate Judge.*

———————————

ARGUED SEPTEMBER 8, 2022 — DECIDED APRIL 30, 2024

———————————

Before WOOD, ST. EVE, and JACKSON-AKIWUMI, *Circuit Judges.*

JACKSON-AKIWUMI, *Circuit Judge.* John Sabo received a probation sentence that exceeded the Wisconsin statutory maximum for his offense. Months after his probation should have been over, he was imprisoned for violating the conditions of that probation. Sabo sued two sets of defendants under 42 U.S.C. § 1983: Sheri Hicks and Debra Haley, the Wisconsin Department of Corrections officials who failed to correct his

unlawful term of probation; and Megan Erickson and Barb Hanson, the probation officers who enforced it. He alleged that all four defendants violated his right of due process and showed deliberate indifference to his unjustified imprisonment, and the two probation officers committed an unreasonable seizure under the Fourth Amendment by failing to release him after they became aware of the sentencing error. The district court dismissed all claims against Hicks and Haley, the corrections officials, and most against Erickson and Hanson, the probation officers, before entering summary judgment for Erickson and Hanson on the deliberate indifference and unreasonable seizure claims. But because Sabo's complaint[1] stated claims of deliberate indifference against Hicks and Haley, and because, assuming all facts and inferences in Sabo's favor, the record as it stands does not compel a finding of qualified immunity, we vacate the district court's dismissal of those claims. We affirm in all other respects.

## I.  Background

### A.  Sabo's Conviction, Sentence, and Incarceration

We accept as true all well-pleaded facts and draw reasonable inferences in Sabo's favor with regard to his dismissed claims against Hicks and Haley. *Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021). As to Sabo's claims against Erickson and Hanson, we recount the facts in the light most favorable to Sabo, the nonmoving party. *Figgs v. Dawson*, 829 F.3d 895, 902 (7th Cir. 2016).

---

[1] We refer to Sabo's operative complaint, which was his first amended complaint, unless otherwise noted.

In 2004, Sabo pleaded guilty to driving while intoxicated and was sentenced to five years' probation. The parties agree that this was an error, as the statutory maximum for Sabo's offense was three years' probation. At the time of Sabo's sentencing, Hicks and Haley worked at the Department's Central Records Unit, where they reviewed and corrected sentences that exceeded the statutory maximum. The judgments they corrected were filed in the Department with copies sent to probation officers and sentencing judges "as a courtesy." Sabo's sentence underwent this review, with no corrections to his sentence.

In 2005, the year after Sabo's sentencing, Hicks and Haley discovered that they had been overstating maximum terms of probation since 2003. They apparently received a chart—from whom the record is unclear—listing the correct maximum probation sentences for various offenses. Despite their realization that some probation sentences they had reviewed were unlawfully long, neither Hicks nor Haley took any steps to investigate or remedy the errors. The defendants estimate that between 1,000 and 1,500 of the sentences reviewed by Hicks and Haley had errors in the probation terms and concede that no action was taken to correct this problem.

Sabo began his probation in July 2014 (it was consecutive to other sentences), with Erickson as his probation officer. In December 2017—approximately five months after a three-year term of probation would have ended—Sabo was arrested in the aftermath of a domestic dispute. Erickson believed Sabo violated the rules of his probation by resisting arrest and consuming alcohol, so she began proceedings to revoke his probation. Erickson also put a "hold" on Sabo requiring that he be jailed pending his revocation hearing. Erickson consulted

with Hanson, the assistant regional probation supervisor, before recommending the hold, though the parties disagree on the extent to which Hanson was involved in that decision.

While in jail—he does not say when—Sabo discovered that his term of probation was longer than the law allowed. Sabo was unable to contact Erickson about the error (probation officers do not accept collect calls, and Erickson refused his request for a jail visit and his fiancée's calls about the matter), so Sabo's attorney informed Erickson. On April 13, 2018, Erickson inquired at the Department about the legality of Sabo's sentence, and was told by Janelle Nehring, a corrections official who specialized in sentencing, that Sabo's attorney "appears to be correct on this one." But Erickson was also informed that the Department's legal counsel had advised that Department officials were "no longer commuting terms of probation per [section] 973.09(2m) [of the Wisconsin Statutes]," the statutory provision governing excessive terms of probation. Nehring offered to send the sentencing court a letter indicating Sabo's probation term was excessive but warned that the Department could do nothing if the court took no action. Erickson forwarded Nehring's email to Sabo's attorney, and both the attorney and Nehring wrote letters to the sentencing court regarding the error. Sabo was finally released on May 3, 2018, the day the sentencing court amended his judgment with the correct term of probation. In total, he spent 291 days on probation beyond the statutory maximum for his conviction, 133 of those in jail.

## B. District Court Proceedings

In May 2020, Sabo sued under 42 U.S.C. § 1983. His complaint identified two sets of defendants whose inaction, he believed, had violated his constitutional rights. First, Sabo

asserted that Hicks and Haley were deliberately indifferent under the Eighth Amendment when they failed to investigate and correct his sentence after realizing their error. Hicks and Haley conceded that they failed to review any of the judgments to which they had applied the erroneous standards, but moved to dismiss, arguing that they had no duty to correct Sabo's sentence and, alternatively, that they were entitled to qualified immunity for not doing so.

Second, Sabo argued that Erickson and Hanson were obliged to release him from jail once they became aware of his erroneous sentence. By failing to do so, Sabo asserted, they were deliberately indifferent to his unjustified imprisonment under the Eighth Amendment and subjected him to an unreasonable seizure under the Fourth Amendment. In moving to dismiss, Erickson and Hanson contended that, because they were merely enforcing a then-valid judgment and took prompt action to inform the sentencing court of the error, there was no constitutional violation, and they were also entitled to qualified immunity.

Finally, Sabo alleged that Erickson and Hanson violated his constitutional rights by failing to discover and correct his sentencing error when he began probation and that all the defendants were negligent under state law and violated his Fourteenth Amendment right to due process. Because Sabo does not challenge the dismissal of these claims on appeal, we do not discuss them further.

The defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6). The district court acknowledged that Sabo's sentence was unlawful and that Hicks and Haley took no action after discovering their mistake, but granted the motion after concluding that they had not violated Sabo's Eighth

Amendment rights. The district court understood Sabo to have alleged that "Haley and Hicks knew that it was essentially certain that, due to their misunderstanding of the law, many probationers were subject to unlawfully long sentences," but not "that Haley or Hicks knew of any likely problem specific to Sabo." Citing *Perrault v. Wisconsin*, No. 15-CV-144-BBC, 2016 WL 126918 (W.D. Wis. Jan. 11, 2016), *aff'd sub nom. Perrault v. Wis. Dep't of Corr.*, 669 F. App'x 302 (7th Cir. 2016), involving a similar § 1983 suit alleging an unlawfully long term of probation, the district court concluded that "simply alleging that defendants were aware of the general possibility that prisoners' sentences may be inconsistent with Wisconsin law does not state a claim for deliberate indifference."

The district court allowed the Fourth and Eighth Amendment claims against Erickson and Hanson to proceed, however, because Sabo had alleged that the Department allowed administrative employees like Hicks and Haley to amend sentences they found to exceed the statutory maximum, and the inference that probation officers like Erickson and Hanson could also do so was plausible.

Sabo moved to reconsider the dismissal of the Eighth Amendment claim against Hicks and Haley. The district court denied the motion after concluding that the Department's policy of reviewing sentences for error did not create a constitutional duty for Hicks and Haley to either identify or correct judges' sentencing errors.

Erickson and Hanson then moved for summary judgment on the remaining Eighth and Fourth Amendment claims against them. The district court granted the motion, concluding that the primary error was that of the sentencing judge

and Sabo had not presented evidence that Erickson or Hanson had the authority to unilaterally correct sentencing errors. Because of this, Erickson and Hanson "had no choice but to enforce the judgment" until it was corrected by the sentencing judge and, therefore, had not been deliberately indifferent to Sabo's constitutional rights.

## II. Discussion

### A. Sabo's complaint alleges a claim of deliberate indifference against Hicks and Haley

We review de novo the district court's decision granting a motion to dismiss for failure to state a claim. *Peterson*, 986 F.3d at 751. For the purpose of Sabo's Eighth Amendment claim against the corrections officials, Hicks and Haley, we accept the facts in his complaint as true and review them in the light most favorable to him. *Id*. Sabo need only allege enough facts to state a claim for relief that is plausible on its face. *Id*.

As a plaintiff seeking to hold public officials personally liable under § 1983, Sabo must plead that (1) Hicks and Haley acted "'under color of state law'" to (2) deprive him of a constitutional right.[2] *DiDonato v. Panatera*, 24 F.4th 1156, 1159

---

[2] The dissenting opinion's focus on what Sabo alleged with respect to duty is misplaced because Sabo was not required to plead duty. Duty is not a pleading requirement for § 1983 claims in general or deliberate indifference claims specifically. None of the dissent's cited cases say it is either: *Rodriguez* and *Jones* relied on the plaintiffs' failures to prove—not plead—duty. 189 F.App'x 522, 527 (7th Cir. 2006); 869 F.2d 1023, 1031 (7th Cir. 1989). And *Farmer* and *Thomas* both discuss duty as arising from the Eighth Amendment itself. *See* 511 U.S. 825, 832–33 (1994); 2 F.4th 716, 719 (7th Cir. 2021). True, Sabo cannot prevail on an Eighth Amendment claim unless the defendants owed him a duty, but he did not need to plead duty. The question of duty is secondary to—and determined by—the

(7th Cir. 2022) (quoting 42 U.S.C. § 1983). Defendants act under color of state law when they abuse the positions given to them by the state. *Id.* at 1159–60. When determining whether a defendant acted under color of state law, courts consider the defendant's specific acts in relation to her performance of state functions. *See, e.g.*, *West v. Atkins*, 487 U.S. 42, 54–56 (1988) (private physician acted under color of state law while treating state prisoner); *DiDonato*, 24 F.4th at 1162 (no § 1983 liability for negligent treatment and sexual assault by city paramedic acting in personal capacity).

Here, Sabo's allegations raise a question of material fact regarding whether Hicks and Haley acted under color of state law. *See Valentine v. City of Chicago*, 452 F.3d 670, 683 (7th Cir. 2006) (defendant's responsibilities on behalf of state may raise question of material fact as to whether defendant acted under color of state law). Hicks and Haley were responsible for reviewing and correcting sentences that exceeded the statutory maximum. That fact, though directly applicable only to their initial review of Sabo's sentence, gives rise to the reasonable inference that they were similarly responsible for some part of correcting past sentencing errors once they were aware of those errors. *See id.*

Sabo must additionally plead that Hicks and Haley deprived him (or caused him to be deprived) of a constitutional right. *See* 42 U.S.C. § 1983; *Didonato*, 24 F.4th at 1159. Custody

question of constitutional deprivation: If what the plaintiff alleges amounts to deprivation of a constitutional right, then persons acting under color of state law of course have a duty to not occasion such a deprivation. The proper focus is on whether Sabo alleged a constitutional deprivation perpetrated or caused by Hicks and Haley, acting under color of state law. *See* 42 U.S.C. § 1983.

beyond the date a person is entitled to release violates the Eighth Amendment if it is the product of deliberate indifference. *Figgs*, 829 F.3d at 902, and probation is a form of custody, *Drollinger v. Milligan*, 552 F.2d 1220, 1224 (7th Cir. 1977); *see also Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015) (listing cases in similar parole context). "Deliberate indifference occurs when a defendant realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015). It requires "more than negligence or even gross negligence": the defendant must have been "essentially criminally reckless, that is, ignored a known risk." *Figgs*, 829 F.3d at 903.

In *Hankins v. Lowe*, we ruled that a parole officer was deliberately indifferent for "refus[ing] to do anything however trivial" to mitigate the known risk that his parolee would be subjected to parole conditions beyond the expiration of her parole. 786 F.3d at 605–06. Similarly here, Sabo alleges that Hicks and Haley "failed to take any steps to correct his patently illegally long term of probation[,]" despite "realiz[ing] that there were judgments of convictions that they had analyzed . . . that contained unlawfully long terms of probation." *See id.* That sufficiently alleges a constitutional deprivation under our caselaw.[3]

_____

[3] The dissenting opinion would apparently characterize Hicks's and Haley's conduct as a violation of state law rather than the Constitution, an argument that relies upon *Wells v. Caudill*, 967 F.3d 598 (7th Cir. 2020). But that case is easily distinguishable because it involved a dispute over an unsettled question of state law. *See id.* at 600 (whether Illinois law permitted multiple pretrial-detention credits to be applied to defendant detained on multiple charges). Here, there is neither an unsettled question of state law nor even a dispute over Sabo's proper sentence: Everyone agrees that Sabo's probation term exceeded the statutory maximum. And as we

Sabo alleges that Hicks and Haley failed to take *any* steps in response to *their known error*. Sabo is not alleging, as the dissenting opinion's duty analysis implies, that corrections officials are, as a general matter, deliberately indifferent for failing to correct excessive probation terms. This distinction draws Sabo's case even closer to *Hankins*, where the parole officer's liability was based on his failure to do anything to ensure he was enforcing the correct probation term, not on his failure to adjust the date the term expired—something he had no power to do. *See id.* Likewise, Hicks and Haley cannot be liable for failing to do something that they had no power to do (for example, enter a court order), but the fact that their responsibilities included correcting sentencing errors gives rise to the inference that they could have done *something* to prompt the correction of Sabo's sentence once they realized their mistake. *See id.* Further supporting that inference, Erickson was told that the Department of Corrections was "*no longer* commuting" excessive probation terms in 2018, implying that there had been an opportunity to commute Sabo's sentence at some time prior. And if, as Sabo alleges, Hicks and Haley failed to take any action within their power to correct the error that they knew they had made, his unlawfully long probation was a reasonably foreseeable result of that failure.

The defendants argue that even if Hicks and Haley knew "as a statistical matter" that some number of "unidentified individuals" were "likely issued some unlawful terms of probation," this could not constitute deliberate indifference because it was merely "knowledge of a general likelihood of

---

explained in *Wells*, "keeping a person in [custody] beyond the end of his term violates the Eighth Amendment . . . *when the proper length is uncontested.*" *Id.* at 602 (emphasis added).

errors" and not specific knowledge that Sabo's sentence was incorrect.

In *Perrault*, the case relied on by the defendants, the district court concluded that the plaintiff, also serving an unlawfully long Wisconsin probation term, had merely alleged that the defendants (who included Hicks and Haley) "were aware of a risk of unlawful sentences generally; not that they were aware of a specific risk that [the plaintiff's] sentence was unlawful." 2016 WL 126918, at *3. But Sabo's complaint alleges that Hicks and Haley had more than a knowledge of a "risk of unlawful sentences generally." Rather, Sabo alleges that they had *actual* knowledge that a specific group of people—probationers whose sentences they had reviewed under the wrong standard between 2003 and 2005—were at a substantial risk of serving unlawfully long probation terms. Their failure to identify the specific individuals in this group who were affected does not, Sabo argues, immunize them from liability.

We agree. We have previously rejected the argument that deliberate indifference requires knowledge of risk to a specific person. In *Brown v. Budz*, involving a claim that prison officials had been deliberately indifferent by failing to protect a white prisoner from another prisoner known to be violent towards whites, we held that "a deliberate indifference claim may be predicated on custodial officers' knowledge that a specific individual poses a heightened risk of assault *to even a large class of detainees*—notwithstanding the officials' failure or inability to comprehend in advance *the particular identity of this individual's ultimate victim*." 398 F.3d 904, 915 (7th Cir. 2005) (emphasis added). That decision followed *Farmer*, *see id.* at 913, where the Supreme Court explained that a prison official may not escape liability "by showing that, while he was

aware of an obvious, substantial risk[,] he did not know that the complainant was especially likely to [suffer the consequences of that risk,]" *Farmer*, 511 U.S. at 843. As the Court elaborated, "it does not matter" whether the risk exists for "reasons personal to [the prisoner] or because all prisoners in his situation face such a risk." *Id.*

Like the prisoners in *Brown* and *Farmer*, Sabo was part of "an identifiable group" facing a known, heightened risk of cruel and unusual punishment—in this case, an unlawfully long probation term. *See* 398 F.3d at 914–15; 511 U.S. at 843. As alleged, Hicks and Haley knew of the heightened risk to that class and did nothing after they realized their error. As in *Brown* and *Farmer*, the defendants' failure to identify the specific probationers who might be harmed by that error does not prevent constitutional liability.

Sabo has therefore stated a claim of deliberate indifference against Hicks and Haley.

### B. Hicks and Haley are not entitled to qualified immunity at this juncture

Hicks and Haley argue that even if Sabo has stated a claim of deliberate indifference they should be entitled to qualified immunity. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (cleaned). To be clearly established, "a right must be specific to the relevant factual context of a cited case," but "the very action in question need not have previously been held unlawful for a public official to have reasonable notice of the

illegality of some action." *Figgs*, 829 F.3d at 906 (cleaned). While the case need not be "directly on point for a right to be clearly established," it "must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 584 U.S. 100, 104 (2018). We have said that is a "high bar." *Lopez v. Sheriff of Cook Cnty.*, 993 F.3d 981, 988 (7th Cir. 2021).

Relying on *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989), and *Haygood v. Younger*, 769 F.2d 1350 (9th Cir. 1985), Sabo argues that he had a clearly established right to avoid an unlawfully long sentence due to the failure of corrections officials to correct—or at the very least, investigate—known sentencing errors. In *Sample*, a corrections official whose job was, in part, reviewing the computation of sentences was informed by the plaintiff that his sentence had been vacated and he "should be out of jail." 885 F.2d at 1104. Despite this, the official did nothing, nor did he refer the problem to anyone else. *Id.* at 1105. The Third Circuit found this was enough to support a claim of deliberate indifference. *Id.* at 1118–19.

Similarly, the plaintiff in *Haygood* wrote a letter to his warden questioning his sentence and demanding his release, which was forwarded to two "Records Officers" at the California Department of Corrections. 769 F.2d at 1353. The Ninth Circuit affirmed liability for the record office defendants because "after being put on notice, [they] simply refused to investigate a computational error," which was enough to find deliberate indifference. *Id.* at 1355 (quoting *Haygood v. Younger*, 527 F. Supp. 808, 823 (E.D. Cal. 1981)).

The defendants contend that both *Sample* and *Haygood* are factually distinguished: they note that, in both cases, the plaintiff himself informed corrections officials of the sentencing error, but Hicks and Haley became aware of the probation

term issue on their own. As the defendants see it, Sabo cannot point to any sufficiently "particularized decisions" that could have put Hicks and Haley "on notice that corrections officers, who review state court sentences, act with deliberate indifference if they determine that they had misunderstood a sentencing statute but do not re-review the state court's prior judgments in order to detect and notify the state courts of its errors."

We disagree. We previously recognized in *Figgs v. Dawson* that *Sample* and *Haygood* clearly established that failure to investigate a complaint that an inmate is being held longer than the lawful term of his sentence can constitute deliberate indifference under the Eighth Amendment. 829 F.3d at 906. In *Figgs*, a recordkeeper with the Illinois Department of Corrections was informed by a prisoner that his sentence had been miscalculated but the recordkeeper took no action to investigate or correct the error. *Id.* at 900–01. We held that the recordkeeper was not entitled to qualified immunity because "closely analogous" cases, including *Sample* and *Haygood*, had clearly established the obligation of corrections officials—and recordkeepers in particular—to investigate unlawful sentences. *Id.* at 906.

While it is true that Sabo did not himself make Hicks and Haley aware of his unlawfully long probation term, we must accept at this phase that they were aware of at least *some* sentencing errors in the identifiable class of probationers to which Sabo belonged, and therefore had knowledge of *some* "prisoner's problem, and thus of the risk that unwarranted punishment was being, or would be, inflicted." *Sample*, 885 F.2d at 1110. We can see no reason why the source of the knowledge of a constitutional risk is relevant when there is a

clearly established constitutional duty to address that known risk. To be sure, unlike the officials in *Sample* and *Haygood*, the defendants here did not know the "identity of . . . [the] ultimate victim[s]" of that known risk of unlawfully long probation sentences. *Brown*, 398 F.3d at 915. But their failure to ascertain the identities of those affected by their mistake does not put their obligation to investigate the risk up for debate. *See Kisela*, 584 U.S. at 104.

The dissenting opinion distinguishes Sabo's case from *Sample* and *Haygood* on the additional ground that the risk to the plaintiffs in those cases was unlawful terms of incarceration, rather than probation. But as our caselaw makes clear, that is a distinction without a difference: Probationers have an Eighth Amendment right against excessive probation terms. *See Hankins*, 786 F.3d at 605 ("Parole is a form of custody. . . . A lawless extension of custody is certainly unusual, and it is cruel in the sense of being imposed without any legal authority.").

As a final note, we have observed that in some "rare" cases, the law can be "clearly established" even without an analogous case if "a defendant's conduct was so egregious and unreasonable that . . . no reasonable [official] could have thought he was acting lawfully." *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018) (cleaned). The Supreme Court has explained that "the salient question . . . is whether the state of the law . . . gave [defendants] fair warning that their [conduct] was unconstitutional." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002); *see also Taylor v. Riojas*, 592 U.S. 7, 8–9 (2020). As alleged, Hicks's and Haley's jobs involved reviewing and correcting unlawfully long probation terms. Yet when they discovered their error—one that might affect more than a

thousand sentences—they did nothing, not even tell someone else of the problem. Given their responsibilities and knowledge, their decision to do nothing at all was both egregious and unreasonable.

In sum, assuming all facts and inferences in Sabo's favor, Hicks and Haley are not entitled to qualified immunity on the record before us. *See Hanson v. LeVan*, 967 F.3d 584, 597 (7th Cir. 2020).

### C. Summary judgment was appropriate for Erickson and Hanson on the Eighth Amendment claim

Sabo also challenges the grant of summary judgment to the probation officers, Erickson and Hanson. We review de novo the district court's grant of summary judgment, considering all facts and making all reasonable inferences in the light most favorable to Sabo. *Figgs*, 829 F.3d at 902. Sabo maintains that Erickson and Hanson were deliberately indifferent to his rights under the Eighth Amendment when they failed to release him from his probation hold after being informed that his sentence was unlawfully long. Sabo relies on section 973.09(2m) of the Wisconsin Statutes, which reads, in full: "If a court imposes a term of probation in excess of the maximum authorized by statute, the excess is void and the term of probation is valid only to the extent of the maximum term authorized by statute. The term is commuted without further proceedings." Because his term of probation was to be "commuted without further proceedings," Sabo contends, Erickson and Hanson were required to free him without waiting for the sentencing judge to amend Sabo's judgment.

The statute is silent on both the process for determining whether a term of probation is excessive and who has the

power to effect a release. Sabo does not explain why, under § 973.09(2m), Nehring's email was sufficient to establish the invalidity of his probation term or why the probation officers—rather than, for example, jail officials—were obliged to release him. But even assuming that Erickson and Hanson had both the authority to release Sabo from the revocation hold before the court issued an amended judgment and some obligation to do so under § 973.09(2m), they could not have been deliberately indifferent to Sabo's Eighth Amendment rights.

A government official is deliberately indifferent when she does nothing or takes action so ineffectual under the circumstances that deliberate indifference can be inferred. *Figgs*, 829 F.3d at 903. Erickson's actions were far from ineffectual. Upon learning from Sabo's attorney that his probation term was unlawfully long, Erickson immediately asked the Department's Central Records Office to review Sabo's judgment of conviction. After confirming the error, Erickson forwarded an email that advised Sabo's attorney to contact the sentencing court. Because of Erickson's actions, both Sabo's attorney and the Department contacted the sentencing court, Sabo's judgment was amended, and he was released from custody three weeks later. Erickson's actions (at least once Sabo succeeded in contacting her, which was not easy) were prompt and effective, not indifferent. And Sabo does not attempt to explain what additional actions Hanson—the supervisor—could or should have taken.

Accordingly, Erickson and Hanson were not deliberately indifferent to Sabo's right to be free from cruel and unusual punishment under the Eighth Amendment.

### D. Summary judgment was appropriate for Erickson and Hanson on the Fourth Amendment claim

Sabo lastly contends that once Erickson and Hanson were informed that Sabo's probation was invalid, his continued detention became unreasonable and, therefore, the probation officers violated his Fourth Amendment rights by failing to immediately release him. The only authority Sabo provides for his contention that the Fourth Amendment required his immediate release is the factually distinct *Rodriguez v. United States*, involving a police dog search of a car conducted after the completion of a traffic stop. 575 U.S. 348, 350 (2015).

We have held that state officials are not liable for holding people in custody pursuant to a facially valid court order unless the custodian knows that judge refuses to make an independent decision or there is doubt about the identity of the detainee. *See Hoffman v. Knoebel*, 894 F.3d 836, 844 (7th Cir. 2018). But the state-court judge here corrected Sabo's sentence and there was no question of mistaken identity. Sabo does not otherwise explain why his lawyer's assertion that his sentence was overly long—or the agreement of a non-attorney Department employee—made Sabo's continued detention unreasonable in the face of a still-valid judgment. Erickson and Hanson therefore cannot be liable under § 1983 for continuing to enforce that judgment prior to its amendment. *See Hernandez v. Sheahan*, 455 F.3d 772, 778 (7th Cir. 2006) ("There is no basis for an award of damages against executive officials whose policy is to carry out [a] judge's orders.").

### III. Conclusion

For the reasons above we VACATE and REMAND the district court's dismissal of Sabo's deliberate indifference claims

against Hicks and Haley for proceedings consistent with this opinion, and we AFFIRM in all other respects.

ST. EVE, *Circuit Judge*, dissenting in part. Everyone agrees that John Sabo's probation term exceeded the applicable maximum under Wisconsin law. The state court judge who imposed Sabo's sentence has absolute immunity, so the question is whether employees in the Wisconsin Department of Corrections Central Records Unit can be held personally liable for failing to catch the error earlier. I agree with the majority that the district court properly granted summary judgment in favor of Megan Erickson and Barb Hanson. But unlike the majority, I believe Sabo also failed to state an Eighth Amendment claim against Sheri Hicks and Debra Haley, and even if he had, qualified immunity would apply. The majority's qualified immunity analysis applies an impermissibly high level of generality in direct conflict with the Supreme Court's directive. I respectfully dissent.

**I**

The district court dismissed Sabo's claims against Hicks and Haley for failure to state a claim. In reversing that decision, the majority devotes the bulk of its analysis to the argument that a plaintiff can state an Eighth Amendment claim by alleging deliberate indifference toward a large class: tens of thousands of persons whose probation sentences Hicks and Haley reviewed under an incorrect understanding of Wisconsin law, approximately 1,000–1,500 of which contained unlawfully long probation terms. It notes that we accept the well-pleaded facts in Sabo's complaint as true and draw all reasonable inferences in his favor, *see Peterson v. Wexford Health Sources, Inc.*, 986 F.3d 746, 751 (7th Cir. 2021), but not that "we need not accept as true statements of law or unsupported conclusory factual allegations," *Bilek v. Fed. Ins. Co.*, 8

F.4th 581, 586 (7th Cir. 2021) (internal quotation marks omitted). That is the first place Sabo's complaint falters.

We read § 1983 against the "background of tort liability." *Monroe v. Pape*, 365 U.S. 167, 187 (1961); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 709 (1999). "[T]he plaintiff in a civil rights tort action [under § 1983] bears the burden of establishing that the defendant owed plaintiff a duty, that the defendant breached his duties to the plaintiff, and that his breach caused the plaintiff actual damages." *Rodriguez v. Woodall*, 189 F. App'x 522, 527 (7th Cir. 2006) (quoting *Jones v. Hamelman*, 869 F.2d 1023, 1031 (7th Cir. 1989)). Herein lies Sabo's first problem. As the majority concedes, Sabo cannot prevail on an Eighth Amendment claim brought under § 1983 unless the defendants owe him a duty. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (duty to provide humane conditions of confinement); *Thomas v. Blackard*, 2 F.4th 716, 719 (7th Cir. 2021) (same). But Sabo's only allegations regarding duty are conclusions of law: Hicks and Haley "owed a duty of care to all those persons whose sentences they reviewed, including John Sabo, to note any terms of probation that exceeded the maximum period permitted by law and to correct those illegalities," and "[o]nce they realized that … they had been analyzing judgments of conviction incorrectly, they owed a duty of care to take steps to review" those judgments. We need not, and should not, take these legal conclusions as true. *Bilek*, 8 F.4th at 586. Simply alleging that Hicks and Haley's job responsibilities included reviewing probation terms does not establish that they owed a duty under the Eighth Amendment to inmates like Sabo, as opposed to simply a duty under state law. *See Wells v. Caudill*, 967 F.3d 598, 602 (7th Cir. 2020) ("[A]n error of state law is not

properly rectified by deeming that error a constitutional tort.").

Contrary to the majority's assertion, I do not take issue solely with Sabo's failure to plead facts with respect to a duty. The bigger problem is that no legal authority imposes a duty on administrative state employees under the Eighth Amendment of the Constitution to check tens of thousands of sentences just in case a state court handed down an inaccurate one. Even if this was part of the defendants' job description, failure to fully perform the duties of one's job does not, on its own, create a constitutional violation. *See Hunter v. Mueske*, 73 F.4th 561, 567 n.1 (7th Cir. 2023). Indeed, we have recognized on essentially identical allegations against these same defendants that "even if Wisconsin law imposed a duty on any of these defendants to question the judgment" of a sentencing court, failure to recognize a sentencing error in such an instance is merely negligent, and "negligent conduct does not violate the Constitution." *Perrault v. Wis. Dep't of Corr.*, 669 F. App'x 302, 303 (7th Cir. 2016).

Even assuming Hicks and Haley owed Sabo a duty when they *initially* reviewed his file, he must also show that they were not just negligent, but deliberately indifferent to a serious risk that his probation term was excessive. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018) (deliberate indifference "requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk"). Sabo does not allege that Hicks and Haley knew their interpretation of state law was wrong when they reviewed his sentence. Indeed, Sabo concedes that their original error "was probably just negligence, not deliberate indifference to a known risk."

Thus, Sabo's claim can only be based on the failure to revisit his file after the fact.

Did Hicks and Haley have an affirmative duty to double-check sentences already calculated and imposed by a state court, without some knowledge of a risk of an inaccurate calculation for a particular person? Sabo's only allegation in support of this proposition is that Hicks and Haley had a duty to retroactively correct mistaken probation terms. Again, we should not accept this legal conclusion. *Bilek*, 8 F.4th at 584. Sabo cites no Seventh Circuit case in support of this duty, without which "it is hard to see why we should read federal law to expose state officials to damages if a federal court, in retrospect, concludes that [those officials] have made errors of state law." *Wells*, 967 F.3d at 601. In fact, neither we nor any other court has ever said that an administrative corrections employee tasked with reviewing sentences owes a duty to every person under sentence such that a failure to correct a miscalculation, without any notice of a specific mistake in a particular person's record, amounts to a constitutional violation.

To be sure, deliberate indifference to the risk that an inmate is serving an "unlawfully prolonged" period of imprisonment as a result of a probation violation that occurs after the probation term should have ended violates the Eighth Amendment. *See Huber*, 909 F.3d at 206–08. But that does not mean officials always violate the Constitution if they miscalculate the length of a probation term under state law or fail to go back and look for earlier errors. *Cf. Wells*, 967 F.3d at 602 ("[K]eeping a person in prison beyond the end of his term violates the Eighth Amendment … *when the proper length is*

*uncontested*." (emphasis added)).* Only when such an admin-
istrative official is *alerted to a specific error*—rather than a po-
tential error somewhere in tens of thousands of sentences—
have we or any other court found that the Eighth Amendment
imposes a duty to investigate. *See Figgs v. Dawson*, 829 F.3d
895, 906 (7th Cir. 2016); *Sample v. Diecks*, 885 F.2d 1099, 1118–
19 (3d Cir. 1989); *Haygood v. Younger*, 769 F.2d 1350, 1355 (9th
Cir. 1985) (en banc). The majority's contrary conclusion rec-
ognizes an Eighth Amendment claim for failing to pull the
needle from a haystack.

The out-of-circuit cases Sabo attempts to use to establish a
duty reveal another problem with his claims against Hicks
and Haley: causation. In *Sample v. Diecks*, a former inmate
sued a senior records officer who miscalculated the time he
had already served on another conviction, causing the plain-
tiff to spend an additional nine months in prison. 885 F.2d at
1102–03. Critically, the officer proximately caused the pro-
longed period of incarceration: after the plaintiff was granted
bail pending a new trial, he personally spoke with the defend-
ant about his situation, and the defendant informed the prison
that the inmate was not eligible for release. The Third Circuit

---

* The majority asserts that Sabo alleges it was the defendants'
"fail[ure] to take *any* steps in response to *their known error*" that gives rise
to the constitutional violation. But in fact, Sabo alleges that their only duty,
even after discovering their misunderstanding, was "to take steps to re-
view the unlawful judgments of conviction and correct the illegalities."
Even after Hicks and Haley discovered their misunderstanding, it was the
court's judgment, not their own mistakes, that they had a responsibility to
correct, according to Sabo. Nevertheless, these distinctions do not matter
because Sabo's allegations of duty owed are legal conclusions, not factual
assertions, and we need not presume them to be true at the pleading stage.

held that the defendant was liable under the Eighth Amendment because he "had the responsibility to review inmates' sentencing status and the authority to direct the release of inmates whose time had been served." *Id*. at 1110. The court emphasized that to succeed on such a claim, "the plaintiff must demonstrate a *causal connection* between the official's response to the problem and the infliction of the unjustified detention." *Id*. (emphasis added).

Sabo repeatedly asserts that Haley and Hicks proximately caused his prolonged probation, but his allegations do not support that conclusion. Twelve years passed between the time Haley and Hicks discovered their mistaken interpretation of state law and the time Sabo's probation should have ended. Hicks and Haley may have been a but-for cause of the excessive probation term appearing in prison records (although the blame ultimately rests with the sentencing judge), but in the intervening years, Sabo or his attorney could have asked the state court to correct his sentence. *See Hunter*, 73 F.4th at 567–68 (noting that a superseding cause may "sever the defendant's liability"). Unlike in *Sample*, where the defendant had reason to believe the plaintiff's sentence was excessive, Sabo alleges only a generalized duty to review inmates' files, not any facts suggesting Hicks and Haley had reason to revisit his file in particular. *See also Haygood*, 769 F.2d at 1352, 1355 (finding deliberate indifference where the plaintiff put the defendants on notice about an error in his sentence). These allegations do not support the conclusion that Hicks and Haley's failure to notice and correct the error in Sabo's probation sentence proximately caused his unlawful incarceration.

The majority attempts to align this case with *Hankins v. Lowe* on the grounds that an allegation that the defendant "fail[ed] to do anything to ensure that he was enforcing the correct term" was sufficient to state a claim for deliberate indifference under the Eighth Amendment. But *Hankins* is clearly distinguishable because Hankins specifically asked her parole officer when her parole would expire, and he refused to tell her. 786 F.3d 603, 604 (7th Cir. 2015). In fact, not only would he not tell her when her parole expired, he told her, "Arkansas would determine when it expired and would revoke her parole if she asked the Arkansas authorities for the date." *Id.* Under those facts, we found that the parole officer "must have realized that he had to find out when his parolee's parole would expire, *since she didn't know and he had forbidden her to inquire of the Arkansas authorities*." *Id.* at 605–06 (emphasis added). In that case, the parole officer had specific knowledge of a particular risk to Hankins and even affirmatively denied her any information, prohibited her from seeking it out, and then refused to learn the date himself. This is a far cry from Hicks and Haley, who were not the only source of information for probation information, who did not deny Sabo access to any information, and who received no specific inquiry into Sabo's probationary period.

By looking past the flaws in Sabo's complaint, the majority fails to grapple with serious issues of duty, causation, and deliberate indifference. More concerning, it expands Eighth Amendment liability to anyone that "could have done *something* to prompt the correction of" a mistake that led to a constitutional violation.

**II**

Assuming for the sake of argument that Sabo pleaded a viable Eighth Amendment claim, he cannot overcome qualified immunity. Qualified immunity shields government officials from damages liability unless they violated clearly established law. *See Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established if it is "dictated by 'controlling authority' or 'a robust consensus of cases of persuasive authority.'" *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." *Id.* The Supreme Court has "repeatedly told courts not to define clearly established law at too high a level of generality," *City of Tahlequah v. Bond*, 595 U.S. 9, 12 (2021) (per curiam), "since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced," *Wesby*, 583 U.S. at 63–64.

The majority holds that factual issues preclude resolving whether Hicks and Haley are entitled to qualified immunity at this stage. To be sure, "the motion-to-dismiss stage is rarely the most suitable procedural setting to determine whether an official is qualifiedly immune," *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022) (internal quotation marks omitted), and defendants may raise the defense at later stages even if immunity is denied on the pleadings. *Behrens v. Pelletier*, 516 U.S. 299, 305–07 (1996). But qualified immunity shields government officials from the burdens of litigation as well as liability, *id.* at 306, so we may deny qualified immunity at the motion-to-dismiss stage only if "the facts, taken in the light

most favorable to the plaintiff, show that the defendants violated a constitutional right" that "was clearly established at the time of the alleged violation," *Campbell v. Kallas*, 936 F.3d 536, 545 (7th Cir. 2019) (cleaned up).

The rule of law the majority claims Hicks and Haley may have violated comes from *Figgs*, which held that out-of-circuit decisions including *Sample* and *Haygood* "clearly established … that the failure to investigate a claim that an inmate is being held longer than the lawful term of his sentence violates the Eighth Amendment if it is the result of indifference." 829 F.3d at 906. Maybe so, viewed at that level of generality. But when we consider the particular facts of this case, crucial distinctions emerge. In all three of the earlier cases, the defendants were on notice that there was a problem with the particular plaintiff's sentence. *Id.* at 899–900 (plaintiff submitted complaints about sentence miscalculation); *Sample*, 885 F.2d at 1104 (plaintiff told defendant he should be "out of jail"); *Haygood*, 769 F.2d at 1353 (plaintiff sent defendant a letter). Here Hicks and Haley had no notice about Sabo's unlawful probation term. Additionally, in the previous cases, the risk to which the defendants were deliberately indifferent was that the plaintiff was unlawfully *incarcerated* based on a sentencing error, while the risk here is a level removed. Hicks and Haley were aware that perhaps 1,000–1,500 of the tens of thousands of sentences they reviewed may have contained unlawfully long probation terms, creating a risk that defendants might serve excessive probation sentences. That risk would only result in unlawful *imprisonment* if such a defendant violated a term of his probation and the state pursued that violation, as happened to Sabo.

The majority reasons that Hicks and Haley's undisputed lack of notice that Sabo's probation term was excessive does not undermine the possibility that Hicks and Haley violated clearly established law. This conclusion flows from the majority's reading of *Figgs* to clearly establish "the obligation of corrections officials—and recordkeepers in particular—to investigate unlawful sentences." That rule, however, is nowhere to be found in *Figgs*. There, we held that a prison official violates the Eighth Amendment if she "fail[s] to investigate the substance of [an inmate's] *complaints*" and that "the failure to investigate *a claim* that an inmate is being held longer than the lawful term of his sentence" was a clearly established Eighth Amendment violation. 829 F.3d at 906 (emphases added). *Figgs* was about a prison official's obligation to respond to an issue with a particular inmate's sentence. *Accord Sample*, 885 F.2d at 1110 (finding an Eighth Amendment violation when prison official with knowledge of the plaintiff's problem and the power and duty to fix it fails to take action); *Haygood*, 769 F.2d at 1355 (holding that Eighth Amendment liability is appropriate where the defendant is on notice of an erroneous sentence). *Figgs*, in other words, was about notice.

The majority's leap from the facts of *Figgs* is not its only logical flaw. Its analysis also elides an important factual distinction between those cases and this one. In *Figgs*, *Sample*, and *Haygood*, the plaintiff was imprisoned beyond his lawful term of incarceration. But this case concerns an unlawfully long term of probation, which turns into incarceration only if the defendant at some future time violates the terms of his probation, as Sabo did here. I do not mean to suggest that sentencing a defendant to an excessive term of probation is not serious, but the qualified immunity doctrine requires us to

mind distinctions like these when considering whether the law is clearly established.

The majority is correct that our caselaw treats probation as a form of custody. But that does not collapse the factual differences between *Sample* and *Haygood* and the case before us for purposes of qualified immunity. The Supreme Court has repeatedly warned that to deny qualified immunity, a case must be *factually* similar so as to put a reasonable person on notice of a constitutional violation. *See, e.g., Kisela v. Hughes*, 584 U.S. 100, 106–08 (2018) (per curiam).

The majority ignores that warning and concludes it is impossible to resolve the qualified immunity question at this stage because it "can see no reason why the source of the knowledge of a constitutional risk is relevant when there is a clearly established constitutional duty to address that known risk." But that analysis comes at an impermissibly high level of generality. As a result, three cases holding that officials must respond to a specific inmate's complaint that he is being wrongfully imprisoned have enlarged into a rule that state administrative employees must review tens of thousands of sentences or face personal liability if a judge imposed an excessive probation term. That is not how the Supreme Court has instructed us to apply qualified immunity—the cases the majority relies on do not put the unconstitutionality of Hicks and Haley's conduct "beyond debate." *Id.* at 104–05 (internal quotation marks omitted). By extending these cases to require prison officials to investigate all sentences regardless of any specific notice, the majority does exactly what the Supreme Court has directed us not to do—it casts the law at too high a level of generality to give officials proper notice of an obligation to investigate even without a specific complaint.

Indeed, *Perrault* makes clear that the legality of Hicks and Haley's conduct is, at the very least, debatable. 669 F. App'x at 302–03. In *Perrault*, we deemed an inmate's appeal frivolous when he alleged that employees at the Wisconsin Department of Corrections—including Hicks and Haley—were deliberately indifferent for failing "to check the accuracy of the sentence pronounced by the state judge" because those allegations suggested at most negligence. *Id.* at 303. The majority's attempt to distinguish *Perrault* on the ground that Sabo pleaded his claim better than Perrault fails because there is no meaningful difference between the factual allegations in the two cases.

In *Perrault*, as here, Hicks and Haley were named defendants. Specifically, Perrault, who was proceeding pro se, alleged that Hicks and Haley were deliberately indifferent:

- Haley "attended a training session … where she learned" that three years was the maximum term of probation, and she was "required to share this information with … Hicks …." ¶¶ 450–51.

- "Haley and Hicks realized apparently that they were not checking judgments … with this limitation in mind." ¶ 452.

- "Haley was aware that … [if] an unlawfully longer [probation] period" was not "corrected by her, there would assuredly be a risk that the offender would be serving a longer sentence than permitted by law …." ¶ 454; *accord* ¶ 455 (Hicks).

Liberally construed, Perrault alleged Hicks and Haley had actual knowledge of a substantial risk that sentences they had reviewed under their incorrect reading of state law contained unlawfully long probation terms. But despite the generous standard of review, we concluded not only that Perrault had failed to allege a plausible constitutional violation, but that his claim was frivolous because it indicated at most negligence on Hicks and Haley's part. *Perrault*, 669 F. App'x at 303. The majority fails to address why Sabo's substantially similar factual allegations preclude Hicks and Haley from qualified immunity.

The majority's alternative holding on qualified immunity—that Hicks and Haley's "conduct was so egregious and unreasonable that … no reasonable [official] could have thought [s]he was acting lawfully," *Reed v. Palmer*, 906 F.3d 540, 547 (7th Cir. 2018) (internal quotation marks omitted)—is likewise flawed. The "obviousness" doctrine applies in cases involving conduct far more extreme than what Sabo alleges Hicks and Haley did here. *See, e.g.*, *Taylor v. Riojas*, 141 S. Ct. 52, 53–54 (2020) (per curiam) (finding an obvious violation where prison officials intentionally confined an inmate to frigid cells covered in feces for six days); *Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002) (finding an obvious violation where prison guards handcuffed an inmate to a hitching post outside for seven hours); *Stockton v. Milwaukee Cnty.*, 44 F.4th 605, 620–21 (7th Cir. 2022) (finding an obvious violation where a prison guard deliberately caused an inmate in "debilitating medical distress" to fall and hit his head). It is even more difficult to apply the obviousness doctrine where we have found similar allegations to fall short of stating a claim. *Perrault*, 669 F. App'x at 303.

In the end, the majority fails to explain how Hicks and Haley are not at the very least entitled to qualified immunity when *Perrault*, the most factually similar case, found no constitutional violation. In light of *Perrault*, it is hard to see how the alleged violation here was clearly established in law when we found an appeal involving similar allegations against the same defendants "frivolous."

*     *     *

The district court's rulings should be affirmed in all respects. Sabo did not plead a plausible Eighth Amendment claim against Hicks and Haley, and even if he had, the defendants would be entitled to qualified immunity because there is no clearly established right to have correctional employees unilaterally review judgments of conviction for errors in probation sentences. I respectfully dissent.